OPINION
{¶ 1} Appellant, Michael Santoriella, Jr. ("Santoriella"), appeals the judgment entered by the Trumbull County Court of Common Pleas. Santoriella received a total prison term of six years for his convictions for voyeurism, pandering sexually oriented matter involving a minor, and illegal use of a minor in a nudity-oriented material or performance.
 {¶ 2} Jeff Baxter ("Jeff") is Santoriella's stepson. In the summer of 2002, Jeff was in his early twenties and lived with his mother and Santoriella in Hubbard Township, Ohio. Jeff lived in a room in the basement, which was converted into a bedroom. Next to his bedroom area was Santoriella's office and work area. Jeff testified that this area was always locked up and he was not allowed in there. Prior to Jeff living in the basement bedroom, his older brother, Scott Baxter ("Scott"), lived in the basement bedroom.
 {¶ 3} One evening, Jeff noticed an extra light on his VCR in his bedroom. He investigated the situation and discovered a videotape in the VCR. He played the videotape and realized that his bedroom area was the subject of the tape. Later in the videotape, Santoriella was seen adjusting the camera angle.
 {¶ 4} Eventually, Jeff informed his mother about the tape and, over her objection, kicked in the door to Santoriella's office. Inside, Jeff found about one hundred and thirty videotapes in a converted gun case. He gave the videotapes to Officer William Green of the Hubbard Township Police Department, who was a family friend.
 {¶ 5} Officer Green asked Santoriella to come to the police station. At the station, Officer Green advised Santoriella of hisMiranda warnings.[1] Santoriella waived his Miranda
rights and gave a written statement admitting to the videotaping. Santoriella stated he began videotaping to check on what activity, such as smoking marijuana, was occurring in the basement. However, he admitted that "out of curiosity, [he] started taping for pleasure."
 {¶ 6} Officer Green gave the videotapes to Detective Donald M. Begeot of the Hubbard Township Police Department. Detective Begeot viewed the videotapes. The videotapes depicted Scott engaging in sexual conduct with his girlfriend, Raeann Reigelman ("Raeann"). Raeann was seventeen years old when the sexual activity depicted in the videotape occurred, which was in 1997. Portions of the videotapes also depict Jeff masturbating. In addition to the camera taping the basement bedroom, Santoriella placed a camera in the vanity in the upstairs bathroom. The videotape from the bathroom viewed several individuals using the toilet. One of the individuals in the videotape was a ten-year-old, female cousin of Jeff's. Detective Begeot compiled a ten-to-fifteen-minute videotape of the portions of the videotapes that depicted criminal conduct.
 {¶ 7} As a result of viewing the videotapes, Detective Begeot obtained an arrest warrant for Santoriella. Santoriella was arrested at his home. He was indicted for nine counts of voyeurism, in violation of R.C. 2907.08, which were all misdemeanor offenses; two counts of pandering obscenity involving a minor, in violation of R.C. 2907.322(A)(1), which are second-degree felonies (for the instances involving sexual conduct between Scott and Raeann); and one count of illegal use of a minor in a nudity-oriented material or performance, in violation of R.C. 2907.323, also a second-degree felony (in regard to filming the ten-year-old girl in the bathroom). At trial, during the state's case-in-chief, the pandering obscenity involving a minor counts were amended to pandering sexually oriented matter involving a minor, to reflect the correct name of the statute charged. Pandering obscenity involving a minor is codified as R.C. 2907.321, while pandering sexually oriented matter involving a minor, is codified as R.C. 2907.322. This change was reflected in the jury verdict forms, however, the trial court's judgment entry incorrectly indicates Santoriella was convicted of pandering obscenity involving a minor in violation of R.C. 2907.322(A)(1).
 {¶ 8} Santoriella pled not guilty to the charges against him. A jury trial was held. Following the state's case-in-chief, Santoriella moved for acquittal pursuant to Crim.R. 29. The trial court denied this motion. Santoriella did not testify or present any evidence. The jury found Santoriella guilty on all counts. Santoriella was sentenced to six-year prison terms on each of the three felony convictions. He received jail sentences of ninety days to six months for each of the misdemeanor voyeurism convictions. These sentences were ordered to be served concurrently, for a total prison term of six years. Also, Santoriella was adjudicated as a sexually-oriented offender.
 {¶ 9} Santoriella raises two assignments of error. His first assignment of error is:
 {¶ 10} "The trial court erred imposing sentences greater than the minimum sentence available upon appellant, in violation of 2929.14(B)."
 {¶ 11} Initially, we note that Santoriella does not challenge his misdemeanor sentences on appeal. Therefore, pursuant toState v. Saxon, we will not disturb the sentences he received on the voyeurism convictions.[2]
 {¶ 12} Regarding his felony sentences, Santoriella argues that the trial court failed to make appropriate findings to impose sentences that were more than the minimum. At the time of sentencing, the trial court was required, pursuant to R.C.2929.14(B), to make findings in order to issue sentences that were more than the statutory minimum. However, these judicial findings are inconsistent with the United States Supreme Court's opinion in Blakely v. Washington.[3]
 {¶ 13} In State v. Foster, the Supreme Court of Ohio held that "[b]ecause R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional."[4]
 {¶ 14} To remedy the sentencing statutes, the Supreme Court of Ohio severed the unconstitutional portions requiring judicial factfinding.[5]
 {¶ 15} Three of the trial court's sentences were "more than the minimum" sentences, which were arrived at via judicial factfinding. Thus, pursuant to State v. Foster, these sentences are unconstitutional.[6]
 {¶ 16} Because his three felony sentences violate State v.Foster, Santoriella's first assignment of error has merit.
 {¶ 17} Santoriella's second assignment of error is:
 {¶ 18} "The appellant's convictions are against the manifest weight of the evidence."
 {¶ 19} Santoriella frames his argument as the convictions are against the manifest weight of the evidence. However, in his brief, he argues that the state did not meet its burden of establishing all of the elements of the counts beyond a reasonable doubt. Such argument is more consistent with a sufficiency of the evidence challenge. When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[7]
 {¶ 20} In State v. Thompkins, the Supreme Court of Ohio held that sufficiency of the evidence and manifest weight of the evidence are not synonymous legal concepts.[8]
Specifically, the court held "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."[9] After reviewing the record, Santoriella's argument would fail on both a sufficiency of the evidence and a manifest weight of the evidence standard. However, since Santoriella has only assigned error regarding the manifest weight of the evidence, we will only conduct an analysis relating to that topic.
 {¶ 21} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 22} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"[10]
 {¶ 23} We note the weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide.[11]
 {¶ 24} Santoriella argues the state failed to establish that he knew what he was taping. For the following reasons, we disagree.
 {¶ 25} Santoriella was charged with two counts of pandering sexually oriented matter involving a minor, in violation of R.C.2907.322, which states, in part:
 {¶ 26} "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
 {¶ 27} "(1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or beastiality."
 {¶ 28} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[12]
 {¶ 29} Santoriella positioned the camera in the basement bedroom so it would film the couch and bed. Raeann testified the sexual activity occurred in the summer of 1997. She was able to determine this date based on an outfit she was wearing in the video and the color of her hair at the time. In the summer of 1997, Raeann testified that she was seventeen years old and between her junior and senior years in high school. Both Scott and Raeann testified they had a long term relationship. Presumably, Santoriella, as Scott's stepfather, knew Scott and Raeann were dating and knew how old she was. Finally, the fact that Santoriella saved the tapes containing the sexual activity suggests he intended to capture such activity. This is especially true for the subsequent incidents. Once Santoriella captured such activity on the first occasion, he knew that he was likely to capture similar images when he continued filming.
 {¶ 30} Taken together, these facts support the jury's conclusion that Santoriella was aware his conduct would likely cause a certain result, i.e., filming a minor engaged in sexual conduct.
 {¶ 31} Santoriella was also charged with one count of Illegal use of a minor in a nudity-oriented material or performance, in violation of R.C. 2907.323, which provides, in part:
 {¶ 32} "(A) No person shall do any of the following:
 {¶ 33} "(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity[.]"
 {¶ 34} R.C. 2907.323 does not provide a specific mental state for a violation of the statute. However, the Supreme Court of Ohio has determined "[r]ecklessness is the culpable mental state required to constitute a violation of R.C. 2907.323(A)(3)."[13] We believe the same mental state should apply to subsection (A)(1) of the statute. This approach is consistent with that of the Fourth Appellate District, which has held recklessness is the requisite mental state for a violation of R.C. 2907.323(A)(1).[14]
 {¶ 35} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."[15]
 {¶ 36} The jury could reasonably conclude that Santoriella acted recklessly when he recorded the ten-year-old girl in a state of nudity. He set up a camera in the family bathroom. He had that camera recording during a graduation party, at which children were present. At a minimum, this conduct could be classified as disregarding a known risk that minors would be filmed in a state of nudity.
 {¶ 37} Next, Santoriella argues that the state did not demonstrate that he made the videos for the purpose of sexual gratification as required under R.C. 2907.08. The voyeurism statute requires the invasion of the privacy of another be done "for the purpose of sexually arousing or gratifying the person's self."
 {¶ 38} In his police statement, Santoriella stated that he continued videotaping for "pleasure." In addition, the fact that the cameras were positioned in a way that was likely to capture individuals in states of nudity or engaging in sexual activity, implies that the tapes were made for sexual pleasure or gratification. Finally, Jeff testified that he watched one of the tapes in which Santoriella filmed himself masturbating while watching one of the homemade videos.
 {¶ 39} We cannot conclude that the jury lost its way or created a manifest miscarriage of justice by retuning guilty verdicts on all of the counts. Therefore, Santoriella's convictions are not against the manifest weight of the evidence.
 {¶ 40} Santoriella's second assignment of error is without merit.
 {¶ 41} We affirm Santoriella's convictions. Further, since they were not appealed, we do not disturb Santoriella's misdemeanor sentences.[16] However, the judgment of the trial court regarding Santoriella's three felony sentences is vacated and reversed. The matter is remanded for resentencing on these counts, pursuant to State v. Foster.[17]
Ford, P.J., O'Toole, J., concur.
[1] See Miranda v. Arizona (1966), 384 U.S. 436.
[2] State v. Saxon, ___ Ohio St.3d ___, 2006-Ohio-1245, paragraph three of the syllabus.
[3] Blakely v. Washington (2004), 542 U.S. 296. See, also,State v. Foster, ___ Ohio St.3d ___, 2006-Ohio-856.
[4] State v. Foster, at paragraph one of the syllabus, following Apprendi v. New Jersey (2000), 530 U.S. 466 andBlakely v. Washington, supra.
[5] State v. Foster, paragraph two of the syllabus, followingUnited States v. Booker (2005), 543 U.S. 220.
[6] State v. Foster, paragraph one of the syllabus.
[7] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307.
[8] State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
[9] Id.
[10] (Citations omitted.) State v. Thompkins,78 Ohio St.3d at 387.
[11] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[12] R.C. 2901.22(B).
[13] State v. Young (1988), 37 Ohio St.3d 249, paragraph three of the syllabus.
[14] State v. Steele (Aug. 2, 2001), 4th Dist. No. 99CA530, 2001 Ohio App. LEXIS 3461, at *14. See, also, State v. Simons
(Nov. 22, 2000), 2d Dist. No. 99CA5, 2000 Ohio App. LEXIS 5411, at *21, citing 29 Ohio Jurisprudence 3d (1994), Criminal Law Section 3389.
[15] R.C. 2901.22(C).
[16] State v. Saxon, supra.
[17] State v. Foster, at ¶ 104.