[Cite as *State v. Mattocks*, 2020-Ohio-3858.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-T-0002** |
| MICHAEL MATTOCKS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2017 CR 000806.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Rhys B. Cartwright-Jones*, 42 North Phelps Street, Youngstown, OH 44503 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Michael Mattocks, appeals multiple convictions of Illegal Use of a Minor in Nudity-Oriented Material or Performance and Pandering Sexually Oriented Matter Involving a Minor following a bench trial in the Trumbull County Court of Common Pleas. For the following reasons, we affirm the decision of the court below.

{¶2} On December 15, 2017, the Trumbull County Grand Jury returned an Indictment against Mattocks, charging him with eight counts of Illegal Use of a Minor in

Nudity-Oriented Material or Performance (Counts 1-2 and 5-10), felonies of the second degree in violation of R.C. 2907.323(A)(1) and (B), and two counts of Pandering Sexually Oriented Matter Involving a Minor (Counts 3-4), felonies of the second degree in violation of R.C. 2907.322(A)(1) and (C). Mattocks was arraigned and entered pleas of not guilty.

{¶3} On September 23, 2019, trial on the charges was conducted to the court. The following witnesses testified on behalf of the State:

{¶4} Michael Shuster, a Liberty Township Police Officer (now Sergeant), was dispatched to Liberty High School on January 17, 2017, regarding an incident involving Mattocks, a substitute teacher at the school. Two students had accessed Mattocks' personal computer without his consent and discovered nude photographs of Mattocks as well as photographs of unknown females.

{¶5} Ray Buhala, a Liberty Township Detective Sergeant (now Captain), was summoned to the High School by Officer Shuster. Mattocks voluntarily surrendered his iPhone 7 and provided the passcode to Buhala. While examining the contents of the phone, Buhala found photographs of a female he recognized as being high school age. Subsequently, he identified the female as a student at Liberty High School, S.B.

{¶6} On January 19, 2017, Detective Buhala executed a search warrant at Mattocks' residence on Stonington Drive. Among the items seized were an iPod and a Mac Tower/iMac.

{¶7} S.B. testified that, in the 2016-2017 academic year, she was a sophomore at Liberty High School and sixteen years old. Mattocks was her substitute teacher in a credit recovery class. Beginning in November 2016, Mattocks and S.B. began to text each other through Facebook Messenger. In January 2017, at Mattocks' suggestion, they

2

began using the Wickr instant messaging app to communicate.

{¶8} Mattocks requested that S.B. send him nude images of herself and she complied. S.B. received notifications that Mattocks screenshotted the images. Six of the images, recovered from Mattocks' iPhone, were introduced as evidence.

{¶9} S.B. testified that she would "always" mention her age in class and "would talk about it in class to everybody."

{¶10} Brenda Golec, a Special Agent with the Ohio Bureau of Criminal Investigation, was contacted by Detective Buhala to assist on the Mattocks case and participated in the search of Mattocks' residence on January 19. She interviewed Mattocks. During the course of the interview, Mattocks admitted to requesting and receiving from S.B. nude images and to knowing her age. He also admitted that the iMac was new when he purchased it.

{¶11} Erica Moore, a Special Agent with the Ohio Bureau of Criminal Investigation, conducted a forensic examination of Mattocks' electronic devices. Moore was able to extract six images of child pornography from the iMac's hard drive by the process of "carving." Moore described the process thus:

> These [images] were all pulled out of unallocated space on the hard disk drive so unallocated space could be anything, like maybe there was a picture that was on the screen and it was deleted or maybe it was just a picture that was never saved. Like if you went to like weather.com and you saw a picture of the state of Ohio, like you don't necessarily have to save that picture on your computer but you would still have that, you know, state of Ohio graphic somewhere floating around on your computer and you might be able to recover that. * * * It's not necessarily deleted but it's pictures or anything really that was never allocated so until your computer overwrites that block, you can still recover anything. So you might delete a file, like you might delete a picture, and up until -- it just tells the computer hey, this space is available to save something onto, and until you overwrite that space with something new, all of that stuff in unallocated space

3

is still able to be recovered.

{¶12} A consequence of recovering images by carving is that there is no metadata associated with the images, i.e., there was no information as to when or how the images came to be stored in the hard drive.

{¶13} Agent Moore also extracted a history of internet searches conducted on the iMac. Search terms included "incest preteen," "pedo" (a common abbreviation for pedophile or pedophilia), and "pthc" (a common abbreviation for preteen hardcore). These searches occurred on December 31, 2016. Other searches were conducted using the terms "remove all metadata" and "how to completely erase all data on my iPhone 7 from my Mac desktop." These searches occurred on January 18, 2017. Moore found evidence that files were downloaded on the Mac, including video files with titles such as "15yo," "7yo," and "12yo." On January 1, 2017, a file began downloading with the title "Lolitas 13yo sex ls island hardcore.zip."

{¶14} There was no evidence directly linking the images of child pornography with either the internet searches or the downloads.

{¶15} On November 13, 2019, the trial court found Mattocks guilty of all counts as charged in the Indictment.

{¶16} On December 18, 2019, the trial court sentenced Mattocks to serve two years in prison for each count to be served concurrently to each other and advised him of his duty to register as a Tier II Sex Offender.

{¶17} On January 13, 2020, Mattocks filed a Notice of Appeal. On appeal, he raises the following assignments of error:

{¶18} "[1.] The trial court erred in convicting Mattocks of all counts of the

4

indictment for lack of sufficient evidence, contrary to U.S. Const. Amend VI and XIV."

{¶19} "[2.] The indictment for all counts relating to the alleged victim, S.B., is fatally defective for failure to include a mens rea in the indictment."

{¶20} "A claim challenging the sufficiency of the evidence invokes a due-process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 165; Crim.R. 29(A) ("[t]he court * * * shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction").

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "Evaluation of the witnesses' credibility is not relevant to a sufficiency analysis." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 207.

{¶21} Counts 1, 2, 5, and 6 (Illegal Use of a Minor in Nudity-Oriented Material or Performance) and Counts 3 and 4 (Pandering Sexually Oriented Matter Involving a Minor) were based on the carved images recovered from Mattocks' iMac. These charges required the State to prove that Mattocks transferred images of minors in a state of nudity and reproduced images of minors engaged in sexual activity respectively. R.C. 2907.323(A)(1) and 2907.322(A)(1).

{¶22} Mattocks contends that carved images, i.e., "computer files that lack

5

identifying data as to, for example, date of download, are insufficient to support convictions for offenses involving possession of contraband computer files." Appellant's brief at 5. Without accompanying metadata, the State cannot prove "the timing, course, user, or any other information concerning the images" which, inter alia, "causes the State's cause to fail under the six-year statute of limitations [R.C. 2901.13]." Appellant's brief at 5-6.

{¶23} The existence of contraband images in the hard drive's unallocated space may support convictions for Illegal Use/Pandering by the same principles of constructive possession applied to cases involving the possession of physical evidence. "Constructive possession exists when an individual exercises dominion and control over an object," and "the person [is] conscious of the presence of the object." *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982). "[C]onstructive possession of contraband may be proven solely by circumstantial evidence." (Citation omitted.) *State v. Owens*, 2018-Ohio-1334, 109 N.E.3d 588, ¶ 32 (11th Dist.); *State v Payne*, 8th Dist. Cuyahoga No. 107825, 2019-Ohio-4158, ¶ 68 ("constructive possession may be proved by circumstantial evidence alone").

{¶24} The evidence in the present case is sufficient to convince the average mind beyond a reasonable doubt that Mattocks transferred and reproduced images of child pornography. This conclusion does not rest exclusively on the carved images recovered from the hard drive but other evidence as well such as: Mattocks purchased the iMac for his own use; the iMac was username and password protected; the iMac was seized at his residence; searches were conducted on the iMac using terms likely to locate child pornography; files were downloaded with titles indicative of child pornography; and,

6

although other persons may have had access to the iMac when Mattocks brought it to school, the searches and downloads occurred during the holidays. Viewing this evidence in a light most favorable to the prosecution, a jury could reasonably infer Mattocks' control over and knowledge of the carved images.

{¶25} Evidence such as this has been held sufficient to support convictions based on the possession of child pornography. *See State v. Fielding*, 2014-Ohio-3105, 15 N.E.3d 912, ¶ 54 (10th Dist.) ("whether the specific search terms utilized by appellant led to the downloading of the particular files at issue is irrelevant[,] * * * [t]he fact remains that appellant input search terms indicative of child pornography, and child pornography was discovered on appellant's computer"); *State v. Conant*, 5th Dist. Richland No. 13CA55, 2014-Ohio-1739, ¶ 33 ("[a]lthough the investigators testified that they could not tell from the data that was received from the computer, who was downloading and viewing the files or when most of the files were downloaded or viewed, the evidence is that it was found on a computer owned and used by appellant, and the computer was password protected").

{¶26} We acknowledge the federal authority cited by Mattocks which supports a contrary result. In *United States v. Flyer*, 633 F.3d 911 (9th Cir.2011), the circuit court reversed a possession conviction based on images recovered from unallocated space on the grounds that there was no evidence that "Flyer could recover or view any of the charged images in unallocated space or that he even knew of their presence there." *Id.* at 920. Thus far, we would concur with the circuit court. "The presence of child pornography in temporary internet and orphan files on a computer's hard drive is *evidence* of prior possession of that pornography, though of course it is not conclusive evidence of

7

knowing possession and control of the images, just as mere presence in a car from which the police recover contraband does not, without more, establish actual or construction [sic] possession of the contraband by a passenger." *United States v. Kain*, 589 F.3d 945, 950 (8th Cir.2009). We disagree with the result in *Flyer*, however, because there was evidence that Flyer was aware of the presence of the images: "Agents interviewed Flyer, who admitted * * * that he had downloaded, saved, and shared child pornography through LimeWire, and that he knew it was illegal to possess child pornography." *Flyer* at 914. For whatever reason, the circuit court in *Flyer* did not consider this evidence in connection with the images recovered from unallocated space. Other federal courts have made the connection and upheld convictions based on possession.

{¶27} In *Kain*, for example, the "FBI Agent * * * testified that, when arrested, Kain admitted he owned the computer and had used it to download 40-50 images of child pornography to the 'Y' file." *Kain* at 949. Although images were found in "temporary internet" and "orphan" files, i.e., "in user inaccessible space outside Kain's control," the circuit court determined there was sufficient evidence to support the conviction. *Id.* "Kain's admissions and Detective Mize's testimony explaining his forensic examination of Kain's computer provided ample support for the district court's finding that Kain knowingly possessed the images of child pornography found on his computer." *Id.* at 950. *See also United States v. Davenport*, 2016 WL 7396719, *3 (Army Ct.Crim.App.2016) ("[c]hild pornography found in unallocated space can support a conviction for possession of child pornography"); *State v. Linson*, 896 N.W.2d 656, 662-663 (S.D.2017) ("[t]he evidence indicated affirmative actions by Linson to seek out child pornography and place it on his computer at one point in time and for whatever duration he chose, bringing it under his

8

control"); *State v. Beck*, 828 S.E.2d 821, 826 (W.Va.2019) ("[w]hen the State cannot prove that a defendant constructively possessed child pornography found in his computer's cache files, a jury may still consider the cached images as circumstantial evidence of a prior violation of the statute").

{¶28} With respect to the six-year statute of limitations for felonies, R.C. 2901.13(A)(1)(a), Mattocks claims the State "has a time problem" inasmuch as it "cannot say when any act related to the files in this portion of the indictment occurred." Appellant's Brief at 5. In the present case, however, the period of limitation did not commence with the commission of the offense. Rather, "[t]he period of limitation shall not run during any time when the corpus delicti remains undiscovered." R.C. 2901.13(G). "'[D]iscovery of the corpus delicti occurs "when any competent person other than the wrongdoer or someone * * * [equally at fault] with him has knowledge of both the act and its criminal nature * * *."'" (Citations omitted.) *State v. Cleavenger*, 11th Dist. Portage No. 2019-P-0036, 2020-Ohio-73, ¶ 26.

{¶29} In the present case, the child pornography on Mattocks' iMac was discovered in or after January 2017 which brings his prosecution well within the six-year period of limitation. *State v. Stefan*, 8th Dist. Cuyahoga No. 104979, 2018-Ohio-266, ¶ 7 ("the statute of limitations started running when the police discovered the child pornography on Stefan's computers").

{¶30} Counts 7 through 10 (Illegal Use of a Minor in Nudity-Oriented Material or Performance) were based on nude images of the victim, S.B. Mattocks asserts that these charges required the State to prove that Mattocks was reckless with respect to his knowledge that S.B. was a minor, i.e., "under the age of eighteen." R.C. 2907.01(M);

9

*State v. Santoriella*, 11th Dist. Trumbull No. 2004-T-0067, 2006-Ohio-2010, ¶ 34.

{¶31} Mattocks claims the element of S.B.'s age is an issue because students in his class were "off grade level" and the State's witnesses acknowledged that S.B.'s physical aspect was that of an eighteen-year-old and that she used an internet name indicating that she was an eighteen-year-old.

{¶32} Regardless of any evidence that S.B. appeared or represented herself as an adult, Mattocks acknowledged in the recorded interview that she was a sophomore and either sixteen or seventeen years old. There is no question about the sufficiency of the evidence that Mattocks believed her to be a minor.

{¶33} The first assignment of error is without merit.

{¶34} Under the second assignment of error, Mattocks claims the Indictment with respect to the charges of Illegal Use of a Minor in Nudity-Oriented Material or Performance is fatally defective because it fails to state the appropriate mens rea. Mattocks relies on *State v. Smith*, 4th Dist. Pickaway No. 06CA7, 2007-Ohio-502, for the proposition that "the failure to include the culpable mental state of recklessness in the indictment charging [a defendant] with illegal use of a minor in nudity-oriented material, in violation of R.C. 2907.323(A)(1), rendered the indictment invalid." *Id.* at ¶ 30.

{¶35} We agree with the State that the *Smith* decision has been superseded in two respects by the Ohio Supreme Court's decision in *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26. In *Horner*, the Supreme Court held: "An indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state." *Id.* at paragraph one of the syllabus. The Indictment in the present case tracks

10

the language of R.C. 2907.232(A)(1) and therefore is not defective for failing to state a mens rea.

{¶36} The Supreme Court further held: "By failing to timely object to a defect in an indictment, a defendant waives all but plain error on appeal." *Id.* at paragraph three of the syllabus. In the present case, no objection was raised to the substance of the Indictment. This court has summarized the effect of these two holdings: where "the language from the statute is mirrored in the information that charged the appellant * * * the information is not defective, and even if it was, appellant waived any defect therein." *State v. Rupert*, 11th Dist. Lake No. 2010-L-121, 2011-Ohio-5105, ¶ 22.

{¶37} The second assignment of error is without merit.

{¶38} For the foregoing reasons, Mattocks' convictions for Illegal Use of a Minor in Nudity-Oriented Material or Performance and Pandering Sexually Oriented Matter Involving a Minor are affirmed. Costs to be taxed against the appellant.


TIMOTHY P. CANNON, P.J.,

MARY JANE TRAPP, J.,

concur.

11