[Cite as *State v. Lautanen*, 2023-Ohio-1945.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

- v -

RUSSELL PAUL LAUTANEN,

Defendant-Appellant.

CASE NO. 2022-A-0028

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 00596

**O P I N I O N**

Decided: June 12, 2023
Judgment: Affirmed

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Christopher R. Fortunato*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Edward M. Heindel*, 2200 Terminal Tower, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Russell Lautanen, appeals from the Ashtabula County Court of Common Pleas where he was convicted on 15 counts of Illegal Use of a Minor or Impaired Person in Nudity-Oriented Material or Performance, second-degree felonies, in violation of R.C. 2907.323(A)(1) and (B).

{¶2} Appellant has raised six assignments of error arguing that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence; that the trial court erred by admitting a phone report into evidence without the

person who created the report authenticating it; that the admission of that exhibit violated appellant's right to confrontation; that the trial court erred in imposing consecutive sentences; and that the trial court erred by failing to merge his offenses.

{¶3} Having reviewed the record and the applicable caselaw, we find that appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence; the trial court did not abuse its discretion by admitting a cell phone report where a witness with knowledge was able to authenticate it; that appellant's right to confrontation was not violated where the creator of a cell phone extraction report did not testify because the report was a machine-generated report; that appellant failed to demonstrate that the record did not support the trial court's imposition of consecutive sentences; and that his offenses were not allied offenses of similar import where each of appellant's 15 counts he was convicted on represented a unique image of a minor female and thus each image constituted a separate harm.

{¶4} Therefore, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

### Substantive and Procedural History

{¶5} In December 2020, appellant was indicted on 15 counts of Illegal Use of a Minor or Impaired Person in Nudity-Oriented Material or Performance, second-degree felonies, in violation of R.C. 2907.323(A)(1).

{¶6} A jury trial was held which demonstrated the following facts:

{¶7} On March 22, 2019, appellant entered a Verizon store in Ashtabula to buy a new phone and transfer the contents of his current phone onto the new device.

2

{¶8} James Snyder, one of the employees at the Verizon store, assisted appellant. Snyder testified that appellant entered the store to purchase a charger and asked about transferring the data from his current phone to a new phone that he had brought with him. Snyder said the new phone had no data on it when he turned it in on.

{¶9} Snyder assisted appellant in transferring over the data from appellant's current Motorola phone to a new Samsung phone. He testified that he used a downloadable app to facilitate the transfer and logged appellant into his Google account on the new Samsung phone. By logging into the Google cloud, appellant's new phone downloaded the images stored on the cloud. During this process, Snyder told appellant that photos were displaying as they transferred. Appellant then grabbed the phone away from Snyder but handed it back. The photos Snyder saw at that time were photos of tools.

{¶10} Snyder checked the two phones to ensure that all photos had been transferred. He said that at that time he noticed photos of what appeared to be nude underage girls between the ages of nine to 13 with their legs spread and clothes off exposing their private parts. He said the photos were not merely photos in poor taste of a child in a bathtub or another such example.

{¶11} Snyder testified that the photos appeared to have had been deleted from the old phone but had likely either remained in cloud storage on appellant's Google account or had not been deleted from the trash bin. He said that the photos did in fact transfer to the new phone.

{¶12} After seeking advice from a co-worker and district manager on how to proceed, Snyder called the police.

3

{¶13} Detective George Cleveland of the Conneaut Police Department testified that he responded to the call at the Verizon store. Cleveland saw appellant's phones in the Verizon store and saw several "graphic images of nude prepubescent girls, specifically their vaginas [1] and in at least one of those images the named pubescent girl was masturbating." Appellant was arrested and transported to the Conneaut Police Department.

{¶14} Cleveland interviewed appellant and viewed the images on the new phone with appellant. Cleveland said he reviewed the photos with appellant in an attempt to identify the young girls in the photos. Appellant identified the girls in the images by their first names and said they were 11 and 12 years old. He identified a third nude adult female as his wife, Delia Samayo. Cleveland said that as he was interviewing appellant, the phone continued to receive messages and explicit photos through the messaging app, Whatsapp. During the interview, appellant said that Samayo had been sending images to him for several weeks and he had deleted photos that came to him.

{¶15} Cleveland's testimony described the 15 photos constituting the charges against appellant which had been transferred from the old Motorola phone to the new Samsung phone. Each of the images he described depicted a young girl with her vagina exposed and posed in a sexual nature.

{¶16} Special Agent Charles Sullivan, an agent with the FBI, testified that he works primarily in crimes against children cases. He worked with an FBI agent in Mexico to assist Mexican authorities investigating the case from their end.

---

1. At times, trial testimony refers to the term "vagina" instead of the term "vulva," even where "vulva" is the proper term. Ultimately, this does not impact the analysis of this case, but is referenced here for clarity.

{¶17} Sullivan said that the woman who sent appellant the pictures was Samayo, and that there were two minor females in the recovered pictures. He said the "FBI forensically examined the three cellular telephones." Sullivan testified that State's Exhibit 4 and Exhibit 25 were Cellebrite extraction reports for the Motorola and Samsung phones. These reports were generated by FBI Cleveland forensic examiner, Christina Suther.

{¶18} A review of these exhibits reveals to us that each extraction report contains a human-authored summary listing the date and time of extraction, the analyst who performed the extraction, and a note specifying: "Case Agent Identified Child Abuse Material."

{¶19} The machine-generated portion of each report indicates the source of the data and provides a unique "Unit Identifier" number. The reports specify the type of cable used for the connection, a unique "Extraction ID" number, and other technical information about the phones' identifying information.

{¶20} Exhibit 4 indicates that the source extraction device was from a Samsung phone. The extraction of Exhibit 4 was completed in approximately one minute. The report contained the file information from 169 images. Each image was numbered and contained the file name, the file location on the device, the size of the file, and the date the file was created and modified. Exhibit 4 was a redacted version of the extraction report which did not contain images.

{¶21} Exhibit 25 indicates the source extraction device was from a Motorola phone. The extraction of Exhibit 25 was completed in approximately three minutes. The report contains the file information from 61 images. Each image was numbered and contained the file name, the file location on the device, the size of the file, and the date

5

the file was created and modified. Exhibit 25 was a redacted version of the extraction report which did not contain images.

{¶22} The State also introduced Exhibit 24 – two discs containing the unredacted versions of Exhibits 4 and 25.

{¶23} Although Sullivan did not use the Cellebrite software himself to perform the extractions he said he reviewed the extracted pictures from both reports and identified the child abuse material in them. He concluded that images had been transferred from the Motorola phone to the Samsung phone.

{¶24} Appellant's trial counsel objected to testimony based on Exhibit 4 because the witness testimony was based on the work of another person. The State established that Sullivan had reviewed the contents of the extraction report and was familiar with the exhibit and the trial court overruled the objection.

{¶25} The court admitted Exhibit 4 and the associated Exhibits derived from it, over appellant's objection and the State rested.

{¶26} Appellant made a Crim.R. 29 motion for acquittal on the basis that the transfer of the images was done by a third person, and not by appellant. The State argued that two transfers took place: the first when appellant moved the pictures from the messaging app, Whatsapp, to the Google cloud storage; and the second when appellant went to Verizon to have the contents of the old phone transferred to the new phone. The court denied the motion and appellant proceeded with his case in chief.

{¶27} Appellant testified that he is an over-the-road truck driver. He testified that he is married "on paper" to Samayo, that she lives in Mexico, but that the two separated in 2018. Appellant stated that he began to receive pornographic material from his wife.

6

He said he "[d]eleted as much as I could or as much as I understand I was deleting it, but I guess delete don't always mean delete come to find out, you know, so." Appellant said the young girls in the photos were his wife's nieces and said the photos involved in the charges against him were sent to him in 2018. Appellant said that any money he sent to his wife was to help her pay for household expenses.

{¶28} Appellant testified that when Snyder mentioned pictures displaying during the transfer, he grabbed his phone away from Snyder to show him the photos of tools the two had been talking about. However, appellant denied asking Snyder to transfer any photos, saying he only wanted his contacts transferred over.

{¶29} At the conclusion of appellant's case in chief, he made a motion for directed verdict which was denied.

{¶30} The jury found appellant guilty on all 15 counts.

{¶31} Prior to sentencing, the court held an argument on sentencing to address consecutive sentencing and the merger of the counts. At the March 2022 sentencing hearing, the court concluded that "[a]ll of the images are different and depict two different minor victims posed in explicit pornographic images."

{¶32} The court found that appellant "had downloaded on his phone and then transferred to another phone, 15 separate pornographic nude images of two different minor girls that he received from his wife in Mexico. Each image was a separate count of illegal use of a minor or impaired person in nudity-oriented material or performance. Evidently here the girls in the images were in the care of his wife at the time and were 9 and 10 years old. I viewed the pictures as did the jurors, and I will say they were highly

offensive and disturbing. \* \* \* it's appropriate that the defendant, Mr. Lautanen, is sentenced to consecutive sentences here."

{¶33} Appellant had one prior conviction for domestic violence and a pending criminal charge for theft and criminal trespassing. The court stated that it considered the purposes and principles of felony sentencing and found that appellant did not have a substantial prior criminal record and had shown remorse.

{¶34} Reviewing the R.C. 2929.12(B) seriousness factors, the court said that the offenses were more serious because the offenses were sexual in nature, the victims were minors, the victims did not provoke the incidents, and mental suffering "would be exasperated by the victim's age." The court sentenced appellant to consecutive two-year terms on each of the 15 counts with a presumed minimum sentence of 30 years and an indefinite maximum sentence of 31 years. The court did not merge the counts.

{¶35} Appellant timely appealed raising six assignments of error.

### Assignments of Error and Analysis

{¶36} Appellant's first and second assignments of error state:

{¶37} "[1.] THE CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶38} "[2.] THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶39} We address appellant's first two assignments together.

{¶40} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the [factfinder] or whether the evidence is legally sufficient to support the [factfinder's] verdict as a matter of law." *State v. Thompkins*, 78

8

Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶41} When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. Id. This naturally entails a review of the elements of the charged offense and a review of the State's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

{¶42} When evaluating the weight of the evidence, we review whether the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other indicated clearly that the party having the burden of proof was entitled to a verdict in its favor, if, on weighing the evidence in their minds, the greater amount of credible evidence sustained the issue which is to be established before them. "Weight is not a question of mathematics but depends on its effect in inducing belief." *Thompkins* at 387. Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates the evidence's persuasiveness. *Id.* The reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a

9

new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶43} The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case and the connection with the prosecution or the defendant. *Id.,* quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus.

{¶44} A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶45} R.C. 2907.323(A) provides that no person shall do any of the following:

(1) Photograph any minor or impaired person who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor or impaired person in a state of nudity, unless both of the following apply:

(a) The material or performance is, or is to be, sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a

10

physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance;

(b) The minor's or impaired person's parents, guardian, or custodian consents in writing to the photographing of the minor or impaired person, to the use of the minor or impaired person in the material or performance, or to the transfer of the material and to the specific manner in which the material or performance is to be used.

{¶46} Although not provided in the statute, the culpable mental state for R.C. 2907.323 is recklessness. *See* R.C. 2901.21(C)(1); *State v. Mattocks*, 11th Dist. No. 2020-T-0002, 2020-Ohio-3858, 156 N.E.3d 946, ¶ 34. R.C. 2901.22(C) states that "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."

{¶47} R.C. 2907.323 does not define "transfer." Applying the ordinary meaning of the word, "transfer" encompasses a defendant sending pictures from one of his or her own electronic devices to another of his or her own electronic devices. *State v. Thomas,* 8th Dist. No. 96146, 197 Ohio App.3d 176, 2011-Ohio-6073, 966 N.E.2d 939, ¶ 49, citing *State v. Anderson*, 4th Dist. Washington No. 03CA3, 2004-Ohio-1033.

{¶48} Here, appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. The State established that the offenses took place in Ashtabula County and presented evidence that appellant entered a Verizon store with two phones. The old phone, the Motorola, already had appellant's

11

Case No. 2022-A-0028

personal information and materials on it. Snyder testified that the new phone, the Samsung, had no data on it when he turned it on.

{¶49} Snyder testified that appellant asked him to transfer all of the contents of his Motorola phone to his Samsung phone while appellant testified that he only asked for the contacts to be transferred. Snyder testified that appellant snatched the phone away when he realized pictures were transferring over.

{¶50} Appellant denied asking Snyder to transfer any photos, saying he only wanted his contacts transferred over. However, appellant also testified that when Snyder mentioned pictures displaying during the transfer, he grabbed his phone away from Snyder to show him the photos of tools the two had been talking about. This contradiction indicates that, at a minimum, appellant was aware that pictures were transferring from the old phone to the new phone.

{¶51} Although appellant's testimony differed in the specifics of the phone transfer from the version Snyder provided, the jury was free to believe all or none of appellant's testimony as the sole judge of the credibility of the witnesses.

{¶52} Further, appellant testified that he believed he deleted the images from his old phone. He also made similar statements to Cleveland during his interview. However, Cleveland testified appellant continued to receive new pornographic pictures even during his interview with appellant. Further, Cleveland said the extraction report did not indicate anywhere that any of the "images were noted as having come from a trash or deleted folder." What is more, appellant's claim that he thought the photos were deleted, even if believed by the jury, does not mean that appellant was not reckless in his conduct by not

12

ensuring they were actually deleted before having Snyder transfer the data from his Motorola phone to the Samsung phone.

{¶53} Further, the State established that appellant knew that his Motorola phone had received images of child pornography from his estranged wife. Cleveland said that appellant admitted the children depicted in the pictures were appellant's nieces through marriage. He said that his review of the evidence revealed at least 17 images on the new Samsung phone that were the same as on the Motorola phone and that ultimately, 15 charges were filed. Cleveland testified with detail about each of the 15 pictures that were transferred and described the nature of the images as pornographic, including depictions of masturbation and the minor's vaginas.

{¶54} In resolving the conflicts in evidence, this is not the exceptional case in which the evidence weighs heavily against conviction. We cannot conclude that the jury lost its way and created a manifest miscarriage of justice.

{¶55} Accordingly, appellant's first and second assignments of error are without merit.

{¶56} Appellant's third assignment of error states:

{¶57} "[3.] THE TRIAL COURT ERRED WHEN IT ADMITTED A CELLEBRITE PHONE REPORT WITHOUT THE AUTHOR OF THE REPORT BEING PRESENT TO AUTHENTICATE THE REPORT."

{¶58} Appellant argues that because Sullivan did not create Exhibit 4, the Samsung cellphone extraction report, his testimony alone could not authenticate the exhibit because he could not testify whether it was an accurate report.

13

**{¶59}** The determination to admit or exclude evidence lies within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Miller,* 11th Dist. Trumbull No. 2014-T-0061, 2015-Ohio-956, ¶ 14. "'The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.' *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678, [148 N.E. 362] (1925)." *State v. Raia,* 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 9. Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, quoting *State v. Beechler,* 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Beechler* at ¶ 67. Here, we address the authentication of evidence under an abuse of discretion standard. *See State v. Wade,* 11th Dist. Lake No. 2019-L-065, 2020-Ohio-2894, ¶ 22.

**{¶60}** Evid.R. 901(A) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "'This low threshold standard does not require *conclusive* proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims it to be.'" *State v. Miller*, 11th Dist. Trumbull No. 2014-T-0061, 2015-

14

Ohio-956, ¶ 21, quoting *State v. Easter,* 75 Ohio App.3d 22, 25, 598 N.E.2d 845 (4th Dist.1991); Giannelli, Ohio Evidence Manual (1990) 6, Section 901.01. Authenticity may be demonstrated through direct or circumstantial evidence. *State v. Jaskiewicz*, 11th Dist. Trumbull No. 2012-T-0051, 2013-Ohio4552, ¶ 12.

{¶61} Evid.R. 901(B)(1) provides, by way of illustration, that testimony from a witness with knowledge that a matter is what it is claimed to be is sufficient to authenticate evidence. The proponent of the evidence need only demonstrate a "reasonable likelihood" that the evidence is authentic. *State v. Jaskiewicz,* 11th Dist. Trumbull No. 2012-T-0051, 2013-Ohio-4552, ¶ 14, citing *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 30.

{¶62} Here, Sullivan testified that he analyzed the extraction reports for both phones and said that he was familiar with the materials in question. As to State's Exhibit 4, he stated "I've reviewed the images and I'm the agent that marks them as being of evidentiary value * * *." He further stated that the "images that are -- that I found on these two cell phones displayed the lascivious exhibition of child's genitalia." Sullivan properly authenticated the evidence as a person with knowledge that the exhibit was what it claimed to be. The trial court did not abuse its discretion by admitting State's Exhibit 4 or the exhibits derived from State's Exhibit 4.

{¶63} Accordingly, appellant's third assignment of error is without merit.

{¶64} Appellant's fourth assignment of error states:

{¶65} "[4.] THE ADMISSION OF STATE'S EXHIBIT 4 VIOLATED LAUTENEN'S RIGHT TO CONFRONT AND CROSS-EXAMINE THE WINTESSES AGAINST HIM."

15

Case No. 2022-A-0028

{¶66} Appellant sought a mistrial and objected to testimony based on State's Exhibit 4 because Sullivan was not the one who did the forensic analysis and did not prepare the extraction reports.

{¶67} The Sixth Amendment to the United States Constitution provides in relevant part "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The right to confrontation applies to all testimonial statements. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). "[T]he admission of a testimonial hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment unless (1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant." *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 173, citing *Crawford* at 68. "The proper inquiry for determining the testimonial nature of a statement is 'whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.'" *State v. Metter*, 11th Dist. Lake No. 2012-L-029, 2013-Ohio-2039, ¶ 35, quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir.2004).

{¶68} Appellant argues that he had a right to confront Suther because she was the person who actually performed the Cellebrite extraction and generated the report.

{¶69} The State argues that it provided notice to appellant through discovery that Suther was a potential witness, and that appellant could have called Suther to testify. The State therefore argues that appellant was not deprived of his right to confront Suther.

{¶70} The State's argument has already been roundly rejected by the United States Supreme Court in *Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 174 L.Ed.2d

16

314, 129 S.Ct. 2527 (2009). In that case, the Court said the defendant's ability to subpoena a witness,

> whether pursuant to state law or the Compulsory Process Clause— is no substitute for the right of confrontation. * * * Converting the prosecution's duty under the Confrontation Clause into the defendant's privilege under state law or the Compulsory Process Clause shifts the consequences of adverse-witness no-shows from the State to the accused. More fundamentally, the Confrontation Clause imposes the burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court. Its value to the defendant is not replaced by a system in which the prosecution presents its evidence via *ex parte* affidavits and waits for the defendants to subpoena the affiants if he chooses.

*Id.* at 324-32; *see also Moore v. Ohio,* 559 U.S. 967, 176 L.Ed.2d 176, 130 S.Ct. 1685 (Where, in light of *Melendez-Diaz*, the United States Supreme Court vacated and remanded *State v. Moore*, 8th Dist. Cuyahoga No. 85828, 2008-Ohio-2359, which held that a qualified expert chemical analyst could testify in place of the chemist who actually performed the testing.").

{¶71} The issue to be decided is not whether appellant could have called Suther as a witness, but whether the Cellebrite extraction report was testimonial in nature and therefore imposed on the State a duty to call Suther as a witness.

{¶72} In *Bullcoming v. New Mexico*, 564 U.S. 647, 180 L.Ed.2d 610, 131 S.Ct. 2705 (2011), the United States Supreme Court held that admitting a report of the defendant's blood-alcohol level without providing testimony from the analyst who performed the report violated the Confrontation Clause. *Id.* at 664-665. The court said that the report was testimonial because it was a statement used to prove a fact at trial. *Id.* The Court further said that it was improper to allow a substitute analyst to testify when that analyst did not perform or observe the test. *Id.* The Court rejected the argument that

17

the analysist's role was that of a scrivener merely transcribing the machine-generated result. *Id.* at 659-660. The Court observed that a substitute analyst could not expose potential inaccuracies made by the original analyst. *Id.* at 660. This was because the analyst's certification report,

> contained more than a machine-generated number: It represented that [the analyst] received Bullcoming's blood sample intact with the seal unbroken that he checked to make sure the forensic report number and the sample number corresponded that he performed a particular test on Bullcoming's sample, adhering to a precise protocol; and that he left the report's remarks section blank, indicating that no circumstance or condition affected the sample's integrity or the analysis' validity. These representations, relating to past events and human actions are not revealed in raw, machine-produced data, are meet for cross-examination.

*Id.* at syllabus.

{¶73} Unfortunately, Ohio case law on the issue of cell phone reports is scant. The Ohio Supreme Court has concluded that "in general, cell-phone records produced by a cell-phone company * * * if properly authenticated, are business records and are not testimonial." *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶ 4. In general, documents "prepared to demonstrate that routine maintenance, such as calibration and instrument checks, have been performed on breathalyzers are non-testimonial." *State v. Wolfle*, 3rd Dist. Paulding No. 11-11-01, 2011-Ohio-5081, ¶ 14; *Melendez-Diaz, supra*, at 311, fn. 1. The critical distinction in *Wolfle* was whether the documents were "prepared with an eye to prosecute a specific defendant" or prepared "to demonstrate compliance with administrative rules." *Id.*

{¶74} Here, the Cellebrite extraction report was certainly prepared with an eye to prosecute appellant specifically. However, the Fifth Circuit Court of Appeals has

18

addressed whether a machine-generated report may be non-testimonial in a case of nearly identical circumstances.

{¶75} In *United States v. Hill*, 35 F.4th 366, (5th Cir. 2022), an agent testified concerning reports of information extracted from the defendant's cell phone. The agent did not perform the extraction and testified as to versions of the report that he had edited down to portions he deemed relevant. *Id.* at 388. The defendant objected, arguing that because the agent did not personally perform the extraction or observe the extraction, his testimony violated the Confrontation Clause. *Id.*

{¶76} The court applied a de novo standard of review and concluded that, based on the holding in *Melendez-Diaz,* "raw, machine-produced data" containing no independent analysis or opinion, such as cell phone GPS tracking reports, were not testimonial statements subject to the Confrontation Clause. *Id.* at 389-390, citing *United States v. Waguespack*, 935 F.3d 322, 333-334 (5th Cir. 2019) (Coming to the same conclusion under a plain error standard of review.). The Fifth Circuit said that "[k]ey differences exist between test reports generated by a person's analysis and test reports which are the result of machine analysis." *Id.* The court said that, unlike *Bullcoming*, the cell phone extraction report at issue was non-testimonial because it contained only raw, machine-produced data and the report contained no "'representations relating to past events and human actions[,]' e.g., the validity of the analysis or the integrity of the sample." (Bracket in original) *Id.*, quoting *Bullcoming* at 660; *accord People v. Abad*, 2021 COA 6, 490 P.3d 1094, ¶ 54-56 (Cell phone extraction report was not hearsay and did not implicate the Confrontation Clause where generating the report required no human input beyond plugging the phone into a machine.); *see also United States v. Arce*, 49

19

F.4th 382, 391−92 (4th Cir. 2022) (Noting that it can be difficult to apply Confrontation Clause standard to technical reports, "[b]ut in general, when 'machines generate[ ] data ... through a common scientific and technological process,' the operators of those machines do not make a 'statement' under the Confrontation Clause when reporting the data." *Id.,* quoting *United States v. Washington*, 498 F.3d 225, 229 (4th Cir. 2007)); *United States v. Lamons*, 532 F.3d 1251, 1262–64 (11th Cir. 2008) ("The exemption of machine-generated statements from the purview of the Confrontation Clause also makes sense in light of the purposes of confrontation.").

{¶77}  What we discern from the above cited authorities is that machine-generated reports or data – such as a cell phone extraction report involved in this case – may be non-testimonial when: (1) the report or data is not generated with an eye to prosecuting a particular defendant; (2) the report or data is not used to prove a fact at trial; (3) where the report or data is generated with an eye to prosecute a particular defendant and prove a fact at trial, it may nevertheless be non-testimonial because the report itself does not rely on the validity of an analysis or adherence to precise protocols which would not be revealed in the machine-generated report itself.

{¶78}  Here, the Cellebrite extraction report was certainly prepared with an eye to prosecute appellant specifically and the report was used to prove facts at trial. However, we are persuaded that the Cellebrite extraction report is non-testimonial by the reasoning of the Fifth Circuit in *Hill, supra*.

{¶79}  The cell phone extraction report that Suther prepared was a machine-generated report and was non-testimonial because the report itself would reveal whether Suther properly performed the extraction or if she extracted information from an incorrect

20

device. Thus, the extraction report here does not contain representations of human actions which would speak to the validity of the analysis or the integrity of the sample. The machine-generated results indicate unique features corresponding to each phone. The machine-generated report itself notes – among other relevant data – what kind of cable was used, provides a "Unit Identifier" number, and a unique "Extraction ID" number. At a side bar relating to the extraction report, the State said that Suther "just sticks it on a machine and it spits it out." The Court overruled appellant's objection saying, "So that was my understanding. [Sullivan's] not testifying to that process."

{¶80} Sullivan testified that although he did not perform the extraction report, he was the person who analyzed the results of that report and concluded that child pornography had been transferred from the Motorola phone to the new Samsung phone. Sullivan's testimony relied on the raw data produced by the extraction report, and he interpreted that data. His analysis was plainly testimonial in nature but relied on the non-testimonial machine-generated cell phone extraction report. We find no violation of the Confrontation Clause.

{¶81} Accordingly, appellant's fourth assignment of error is without merit.

{¶82} Appellant's fifth assignment of error states:

{¶83} "[5.] THE FINDINGS THAT WERE MADE TO IMPOSE CONSECUTIVE SENTENCES WERE NOT SUPPORTED BY THE RECORD."

{¶84} There are three ways an appellant can challenge consecutive sentences on appeal. *State v. Lewis*, 11th Dist. Lake No. 2001-L-060, 2002-Ohio-3373, ¶ 6. First, the appellant may argue that the sentencing court failed to state the findings for consecutive sentences that R.C. 2929.14(C)(4) requires. *State v. Torres*, 11th Dist. Lake No. 201-L-

21

122, 2003-Ohio-1878, ¶ 18; R.C. 2953.08(G)(1). Second, the appellant may argue that the record clearly and convincingly does not support the findings the sentencing court made to justify consecutive sentences. *Lewis* at ¶ 7; R.C. 2953.08(G)(2)(a). Third, the appellant may argue that his sentence is clearly and convincingly otherwise contrary to law. R.C. 2953.08(G)(2)(b).

**{¶85}** R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶86}** In making its findings for consecutive sentences, the sentencing court is required to engage in the analysis for consecutive sentencing and specify the statutory criteria warranting its decision. *State v. Bonnell*, 140 Ohio St. 3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 26. While the sentencing court is not required to state exact reasons

22

supporting its findings, the record must contain a clear basis upon which a reviewing court can determine that the sentencing court's findings for imposing consecutive sentences are supported by the record. *Id.* at ¶ 27-28.

**{¶87}** Appellant acknowledges that the trial court made the appropriate findings to impose consecutive sentences. However, appellant argues that the findings were contrary to the record because he merely received the pictures from his estranged wife and did not transfer the pictures to a third party. He contends that there is no evidence in the record to suggest that the harm caused by the events was so great or unusual that no single term would suffice.

**{¶88}** At the sentencing hearing, the trial court articulated the basis for imposing consecutive sentences by noting the disturbing and sexual nature of the offenses, that the victims did not provoke the offenses, and the court highlighted the young age of the two victims. The court also said that each image represented a separate harm. The court articulated a clear basis upon which this Court can determine whether its findings to impose consecutive sentences were supported by the record. *Id.* On that basis, we conclude that the record supports the trial court's imposition of consecutive sentences under R.C. 2929.14(C)(4). Appellant has not shown how this record does not clearly and convincingly support the findings of the sentencing court to impose consecutive sentences.

**{¶89}** Accordingly, appellant's fifth assignment of error is without merit.

**{¶90}** Appellant's sixth assignment of error states:

**{¶91}** "[6.] THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE ALL OF THE CHARGES AS ALLIED OFFENSES INTO ONE COUNT."

23

Case No. 2022-A-0028

{¶92} Appellant argues that his charges should have been merged for purposes of sentencing because he committed one act to effectuate the transfer of the pictures. Therefore, he believes that he should be sentenced for only one count because the conduct was not of dissimilar import, the offenses were not committed separately, and because the conduct was not committed with a separate animus.

{¶93} At sentencing, the trial court said appellant "had downloaded on his phone and then transferred to another phone, 15 separate pornographic nude images of two different minor girls that he received from his wife in Mexico. Each image was a separate count of illegal use of a minor or impair person in nudity-oriented material or performance."

{¶94} While the defendant bears the burden of establishing entitlement to having offenses merged under R.C. 2941.25, an appellate court conducts a de novo review of the trial court's decision regarding merger of offenses. *State v. Frost*, 11th Dist. No. 2020-P-0031, 2020-Ohio-6920, 165 N.E.3d 351, citing *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶95} R.C. 2941.25, Ohio's merger statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶96} "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses

24

were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus. "An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *Id.* at ¶ 31.

{¶97} Where a defendant's conduct harms more than one person, the harm to each person is separate and the defendant can be convicted on multiple counts. *Id.* at ¶ 26. "[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable harm from the harm of the other offense." *Id.*

{¶98} The Ohio Supreme Court recognized that analyzing whether offenses are of dissimilar import "may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct – an inherently subjective determination." *Id.* at ¶ 32.

{¶99} The State argues in its brief that "the transfer itself may have been one transaction, but what was transacted was at least 61 images. * * * [T]he amount of images here used to manipulate these victims was more than one offense." In arguing against merger before the trial court, the State cited *State v. Bosley*, 7th Dist. Mahoning No. 16 MA 0100, 2017-Ohio-7643.

{¶100} In *Bosley*, the Seventh District held that multiple offenses of Pandering Sexually Oriented Matter Involving a Minor do not merge. *Id.* at ¶ 16. The court noted that many other appellate districts in Ohio have come to similar conclusions. *Id.*, citing *State*

25

*v. Duhamel,* 8th Dist. Cuyahoga No. 102346, 2015-Ohio-3145; *State v. Eal,* 10th Dist. Franklin No. 11AP-460, 2012-Ohio-1373; *State v. Mannarino,* 8th Dist. Cuyahoga No. 98727, 2013-Ohio-1795.

{¶101} The Eighth District in *Duhamel* held that the act of downloading "each file of child pornography" was done with a separate animus and "each downloaded file was a crime against a separate victim or victims." *Id.* at ¶ 62. *Eal* similarly held that each individual image represents a "new and distinct crime" and that the mere fact that the crimes occurred in quick succession did not "mean that they were not committed separately or with separate animus." *Eal*, at ¶ 93, quoting *State v. Blanchard*, 8th Dist. Cuyahoga No. 90935, 2009-Ohio-1357, ¶ 12. *Mannarino* held that the two counts of Pandering Sexually Oriented Matter Involving a Minor under R.C. 2907.322(A)(1) and (A)(2) were not allied offenses of similar import where each charge was supported by a separate image or video. *Id.* at ¶ 53.

{¶102} In addition, the Fifth District joined the reasoning of the above cited cases in *State v. Starcher*, 5th Dist. Stark No. 2015CA00058, 2015-Ohio-5250. The court, addressing whether multiple counts of Pandering Sexually Oriented Matter Involving a Minor were allied offenses said that a separate animus exists for each time a separate image or file is downloaded or saved because the "*selection* of each individual video or image is a separate decision." *Id.* at ¶ 35. (Emphasis added).

{¶103} The above case law emphasizes two elements. First, that the defendant engaged in the separate acts of selecting – whether by downloading, uploading, saving, soliciting, creating, or receiving multiple images. None deals specifically with a single transfer of multiple images from one device to another. Second, that each image

26

Case No. 2022-A-0028

represents a separate instance of harm to a victim. With each image, the defendant is causing harm to separate victims or creating a separate and identifiable harm to the same victim.

{¶104} Here, appellant committed a single act – that of transferring the contents of the Motorola phone to the Samsung phone. In this way, this case is distinct from the above cited authorities because appellant did not select any particular files to transfer – appellant transferred the entire contents of the Motorola phone to the Samsung phone. He was not selecting individual files in a way that could support a determination that he made 15 separate decisions to transfer the 15 files. *See Starcher*, 2015-Ohio-5250, ¶ 35. Further, appellant did not transfer the images to a third party or distribute them in any way.

{¶105} However, appellant's conduct does constitute two or more offenses against a single victim or multiple victims. As the evidence demonstrated, there were multiple pictures of the two identified minor victims. Each count was supported by a separate image and each picture represented a separate and identifiable harm. *See Ruff* at ¶ 26. On this basis, we conclude that the 15 counts appellant was sentenced on were not allied offenses of similar import.

{¶106} Accordingly, appellant's sixth assignment of error is without merit.

27

{¶107} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.