**[Cite as *State v. Volpi*, 2024-Ohio-5764.]**

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

THOMAS L. VOLPI,

        Defendant-Appellant.

**CASE NO. 2024-A-0046**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2019 CR 00500

---

## O P I N I O N

Decided: December 9, 2024
Judgment: Affirmed in part, reversed in part, and remanded

---

*Colleen M. O'Toole*, Ashtabula County Prosecutor, *Christopher R. Fortunato* and *Mark Majer*, Assistant Prosecutors, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*William C. Livingston* and *Mark R. DeVan*, Berkman, Gordon, Murray & DeVan, 55 Public Square, Suite 2200, Cleveland, OH 44113 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Thomas Volpi, appeals from the judgment of the Ashtabula County Court of Common Pleas after his convictions for one count of Rape, a first-degree felony in violation of R.C. 2907.02(A)(2), and five counts of Unlawful Sexual Conduct with a Minor, third-degree felonies in violation of R.C. 2907.04(A). These charges related to two minor victims: A.W. (D.O.B. 11-1-2001) and D.L. (D.O.B. 9-5-2003). After his convictions, Appellant filed an appeal in *State v. Volpi*, 2023-Ohio-4488 (11th Dist.) (*Volpi I*). This Court affirmed his conviction for Rape but reversed his convictions for Sexual

Battery and remanded for resentencing on the previously merged counts of Unlawful Sexual Conduct with a Minor.

{¶2} Appellant now appeals following resentencing, raising six assignments of error, arguing: (1) the trial court erred by prohibiting defense counsel from commenting on the State's failure to call D.L.'s father as a witness; (2) the trial court erred by permitting the introduction of irrelevant and hearsay testimony; (3) that his convictions on Counts 18-24 for Unlawful Sexual Contact with a Minor were against the manifest weight of the evidence; (4) the trial court's imposition of consecutive sentences was contrary to law for various reasons; (5) the trial court improperly imposed consecutive sentences based on Appellant's silence at trial; and (6) that his aggregate sentence amounts to cruel and unusual punishment.

{¶3} Having reviewed the record and the applicable caselaw, the trial court did err in prohibiting defense counsel from commenting on the State's failure to call a witness. However, that error was harmless beyond a reasonable doubt. Second, we previously addressed and rejected Appellant's arguments contained in his second assignment of error in *Volpi I* and do so again here. Third, Appellant's convictions are not against the manifest weight of the evidence. Fourth, the trial court failed to make the necessary findings contained in R.C. 2929.14(C)(4) to impose consecutive sentences, and the trial court must resentence Appellant to correct the error. Because of this error, we do not pass on Appellant's fifth and sixth assignments of error.

{¶4} Therefore, the judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

2

Case No. 2024-A-0046

## Substantive and Procedural History

{¶5} On August 14, 2019, Appellant was indicted on 39 counts: 12 counts of Rape, first-degree felonies in violation of R.C. 2907.02(A)(2); 11 counts of Sexual Battery, third-degree felonies in violation of R.C. 2907.03(A)(2); five counts of Unlawful Sexual Conduct with a Minor, third-degree felonies in violation of R.C. 2907.04(A)(3); nine counts of Gross Sexual Imposition, fourth-degree felonies in violation of R.C. 2907.05(A)(1); and two counts of Furnishing Alcohol to Underage Persons, first-degree misdemeanors in violation of R.C. 4301.69(B) and 4301.99(C). Appellant pled not guilty to the charges.

{¶6} On June 21, 2020, the matter proceeded to trial. On that date, the State voluntarily dismissed the two counts for Furnishing Alcohol to Underage Persons.

{¶7} In *Volpi I* we set forth the following factual summary:

{¶8} The State called 12 witnesses and appellant called his daughters, Adrianna Volpi and Abigail Volpi. The following summarizes the testimony and evidence:

{¶9} On July 5, 2019, D.L. was 15 years old. She had a brother (Michael) and a sister (Samantha). A.W., who was 17, lived with them. A.W. was dating Michael, who was also 17. D.L.'s father was dating Teresa Swanson. Teresa is one of appellant's daughters.

{¶10} D.L., A.W., Michael, Samantha, and others went to a swim party at appellant's house. Also present at the party was Tiara Babbitt, one of appellant's former employees. Tiara pled guilty to a fourth-degree felony Obstructing Justice charge for her involvement in the case in exchange for her testimony. Tiara testified that she was under the influence of heroin and Xanax pills during the party.

{¶11} D.L. had been to Appellant's house before but had never gone swimming there. A.W. said she had never been to Appellant's house before but knew Appellant. While there, appellant asked numerous times if D.L would be able to drive to his store to get alcohol. Her father and Teresa both said no on multiple occasions because she was only 15 and did not have her learner's permit. Appellant also asked people their ages at the party and both A.W. and D.L. told him their ages.

3

{¶12} Michael testified that Appellant "was not our step grandfather, but we looked at – looked at him as our grandfather" because "my father was dating his daughter, and we were around them quite frequently for family activities."

{¶13} Teresa and D.L.'s father left around 9:30 p.m. and the minor children arranged to stay the night. At this time, appellant told the minors they could drink alcohol out of red Solo cups. D.L. said she drank eight or nine drinks that night and A.W. said she had six drinks.

{¶14} D.L. said she went into the house with appellant to get some towels. Appellant told D.L. she had a nice body and engaged in an act of sexual conduct with her. D.L. said she did not know what to do and did not stop him. Appellant also grabbed D.L.'s hand, causing her to engage in an act of sexual contact. Appellant then said he had been thinking about "doing this stuff to me for a while, since the first time he laid his eyes on me." D.L. did not say anything and was afraid appellant would become angry if she did.

{¶15} After this, D.L., Tiara, and Appellant went to Appellant's deli, Albino's, to pick up money to buy cigarettes and alcohol.

{¶16} D.L. said she and Appellant went into his office and appellant pulled her shorts down, touched her erogenous zone, and performed oral sex on her. Appellant pulled his pants down and caused D.L. to engage in an act of oral sex. D.L. also said that Appellant touched her breasts under her top and unsuccessfully attempted to engage in sexual intercourse with her. D.L. said she told appellant to stop during this encounter, but he continued and said, "no one was going to find out, that it was going to be our secret."

{¶17} Appellant then went out to the car, brought Tiara into the store, and once inside, Appellant, Tiara, and D.L. performed acts of sexual conduct with each other. D.L. said Appellant was directing their actions and touching both of them. After this, Appellant told D.L. he would start paying her if she continued to be good and made promises to buy things for her.

{¶18} The three went back to appellant's house, and D.L. told A.W. about what had happened but asked her not to tell anyone.

{¶19} Later in the night, Appellant called Tiara and D.L. to his room and the three again engaged in sexual activities. Appellant attempted to engage in intercourse with D.L. but was unable to do so, saying he wished he did not drink as much as he did. During this time, A.W. came looking for D.L. and took her back out to the pool and told her she would not leave her for the rest of the night.

{¶20} During the party, Appellant told his friend Tony that D.L. would be good in bed and Appellant made a sexual remark about Tony to D.L. Appellant took D.L.'s hand and tried to cause her to commit an act of sexual contact with Tony. Tony rejected appellant's suggestions. D.L. said that

4

Tony knew how old she was. Appellant objected to testimony about this interaction with Tony, but the trial court allowed it for the limited purpose of establishing that Appellant knew D.L.'s age.

{¶21} At the end of the night, Appellant directed where each of the guests would sleep. He told D.L. and A.W. to sleep in his room and said he would sleep on the couch. As D.L. and A.W. were getting ready for bed together, Appellant came into the room and said he would sleep in the bed with them with D.L. in the middle. Appellant started touching D.L. in the bed and she began crying. A.W. volunteered to move to the middle. Appellant touched A.W.'s vagina, removed her underwear, and performed oral sex on her. D.L. said she saw appellant remove A.W.'s tampon, however, A.W. denied this. A.W. testified that she told appellant to stop three or four times.

{¶22} D.L. used A.W.'s phone to text Michael regarding his commission of a sexual act with A.W. Michael came into the room, said he saw Appellant touching A.W, and told appellant "You know she's 17, right?" and then walked out. A.W. testified that Appellant continued to perform oral sex after Michael left. However, D.L. said that Appellant stopped and the two girls left the room.

{¶23} After leaving the room, D.L. and A.W. contacted Teresa and said Appellant had engaged in sexual activity with them. While waiting for Teresa to arrive, Appellant again promised to give D.L. money and said he could go to jail if they said anything. Michael said he found A.W.'s underwear on the floor in appellant's bedroom and took them with him to give to the police.

{¶24} Teresa came to the house and began screaming at appellant. Teresa took D.L. and A.W. to the Ashtabula Police Department. While on station, Michael gave officers A.W.'s underwear taken from Appellant's bedroom.

{¶25} A.W. and D.L provided statements to the investigators and went to the hospital. Sexual Assault Nurse Examiner (SANE) certified nurses performed examinations on both girls and took specimens for further testing. D.L. reported that appellant had choked her, and her treatment records noted a contusion on her throat. As part of the examination and medical treatment, the SANE nurses took statements about the events that transpired at the party. The nurses both explained these statements are medically necessary because they ensure they can provide appropriate care and take necessary samples.

{¶26} The SANE nurses read their reports into the record. These reports included written narrative statements from the girls. These statements had been recorded verbatim for the SANE reports and read into the record as part of the SANE nurses' testimony. Appellant objected to reading the narratives on hearsay grounds, but the trial court overruled the objections because the girls gave their statements in the context of receiving medical treatment. In addition, appellant objected to D.L.'s statement specifically

5

because D.L. related that Appellant told her she did not need her "n*****" boyfriend and that she did not "need those black people. All you will be doing is living in Section 8 housing. Let me take care of you. I can buy you a big house." The SANE nurse who took D.L.'s statement said that she had to take breaks because D.L. was "very upset and crying[.]"

{¶27} The next day, investigators searched Appellant's house pursuant to search warrant. While investigators were on-scene, appellant offered that his daughters throw wild parties and he was asleep during the party. He said when he woke up, one of the girls accused him of raping her and he told them to get out of his house.

{¶28} Tiara talked to the police the day after the party and denied having any involvement. After this, she talked to appellant at his store. She said Appellant pulled her shirt up to make sure she was not wearing a wire and told her not to talk to the police. Tiara eventually told investigators about her involvement.

{¶29} Matthew Wunsuch, of the Ashtabula County Children Services Board ("ACCSB"), testified that he sat in on forensic interviews of both girls while another ACCSB worker conducted the interviews. Wunsch said the purpose of a forensic interview is to "discover information for the purpose of medical diagnosis and treatment, for the purpose of child protection, for any purpose of law enforcement[.]" After conducting the interviews, Wunsuch recommended counseling services to both A.W. and D.L.

{¶30} The State presented video recordings of the girls giving these interviews. Appellant objected to their use for the jury on hearsay grounds and because they were cumulative of A.W. and D.L.'s testimony. During a sidebar, the trial court said "So, the testimony that's in these videos is already in?" Appellant's trial counsel said "Correct." The State argued the statements were not duplicative and were given for the purpose of medical treatment. Relying on *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, and because the victims in this case did testify and were subject to cross examination, the court allowed the video statements to be played for the jury.

{¶31} Lab results from the Bureau of Criminal Investigation (BCI) indicated that the rape kits for A.W. and D.L. contained DNA consistent with appellant. In addition, D.L. and A.W.'s underwear contained DNA consistent with appellant.

{¶32} The State rested and Appellant's daughters, Adrianna Volpi and Abigail Volpi, testified in his case in chief.

{¶33} Adrianna and Abigail said they stopped by the party for about five minutes. They saw A.W. and D.L. talking on the porch laughing and giggling. They said Appellant was intoxicated. Appellant attempted to elicit testimony from Adrianna and Abigail that Michael was skinny dipping with

6

Tiara while A.W. talked to Appellant. Appellant intended to use this evidence to demonstrate that A.W. had a motive of jealousy to engage in sexual acts with Appellant. The trial court sustained the State's objection to the testimony.

*Volpi I* at ¶ 8-33.

{¶8} The jury found Appellant guilty on Count 12, Rape, for conduct relating to A.W., and guilty on Counts 18-22, Sexual Battery, and Counts 24-28, Unlawful Sexual Conduct with a Minor, for conduct relating to D.L. The jury returned not guilty verdicts on the remaining counts.

{¶9} On August 29, 2022, the trial court sentenced Appellant. The parties agreed that Counts 18-22 and Counts 24-28 merged for sentencing purposes. The State elected to proceed to sentence on Counts 18-22, Sexual Battery.

{¶10} In *Volpi I,* we affirmed Appellant's conviction for one count of Rape and reversed Appellant's convictions on Counts 18-22 for Sexual Battery because the State failed to present sufficient evidence that Appellant was acting in loco parentis for D.L. We therefore remanded the matter to the trial court to resentence Appellant on the previously merged Counts 24-28, Unlawful Sexual Conduct with a Minor.

{¶11} On May 1, 2024, the trial court resentenced Appellant. After hearing appellant's trial counsel on sentencing, the trial court said the following pertaining to consecutive sentences:

> [Y]ou've asked for concurrent time, but we have two distinctly separate victims. On Count Twelve, the victim is [A.W.] who was 17 years of age. . . . [O]n Counts Twenty-Four to Twenty-Eight, the victim is [D.L.], a 15-year old, a separate victim. Are you arguing that – and I'm not being disrespectful – for a buy one, get one free? Because I don't believe if you sexually assault a 17-year old, you get to sexually assault a 15-year old with no additional penalty. But are you trying to argue that issue?

7

Case No. 2024-A-0046

{¶12} Appellant's trial counsel responded that consecutive sentences were not mandatory, and the court agreed.

{¶13} The court also said, "my recollection of the trial testimony was the five offenses involving your client and D.L. actually occurred at different locations. They occurred at both Mr. Volpi's house and his business. . . . Which I consider to be a continuing course of conduct. It wasn't all at one place one time."

{¶14} Next, the trial court said that although Tony did not testify, his statement to Appellant to "not have sexual relations with D.L. because she was only 15 and it was wrong . . . and that's something that struck me." Appellant denied that Tony had said this to him and told the court that "I don't understand the Tony thing, where that comes in with anything." Appellant's trial counsel then told the court that the record did not support the trial court's recollection about Tony remarking on D.L.'s age to Appellant.

{¶15} The trial court re-sentenced Appellant to a minimum of 11 years and a maximum term of 16 and one-half years on the Rape count and 60 months on each of the Unlawful Sexual Conduct with a Minor counts. The trial court ordered the sentences be served consecutively for a total of 36-41 and one-half years in prison. In imposing consecutive sentences, the trial court said:

> The Court finds that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm cause[d] by the two or more multiple offenses was so great or unusual that no single prison term for the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> So, I am ordering that the sentences on Counts Twenty-Four, Twenty-Five, Twenty-Six, Twenty-Seven and Twenty-Eight be served consecutively to each other and consecutive to the sentence in Count Twelve. So, on these five counts, it would be 25 years consecutive to Count Twelve.

{¶16} Appellant timely appealed, raising six assignments of error.

8

**Assignments of Error and Analysis**

{¶17} Appellant's first assignment of error states: "The trial court committed reversible error in limiting defense counsel's closing argument in violation of Appellant's constitutional rights secured under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution. (Tr. Vol. 6 at 625-26)."

{¶18} Appellant's trial counsel attempted to argue during closing arguments that the State failed to call D.L.'s father as a witness to corroborate D.L.'s testimony that her father told Appellant she was too young to drive. However, the State objected to this argument and the trial court sustained the objection. Appellant argues that Crim.R. 16(I) permits a party "during argument" to comment upon "the presence or absence of the witness."

{¶19} The State counters that Appellant could have also called the witness. Further, the State asserts the testimony would have been cumulative, because D.L. had already testified about the matter. Finally, the State argues that limiting Appellant's closing argument in this way was not prejudicial because the State did not move to strike or request the jury disregard the statements Appellant's counsel had made and the jury was free to consider the argument despite the trial court sustaining the State's objection.

{¶20} The State urges that if prejudice exists, the error was harmless because there was overwhelming evidence demonstrating Appellant's guilt.

{¶21} The harmless error standard is "'significantly more favorable to the defendant.'" *State v. Perry,* 2004-Ohio 297, ¶ 15, quoting *United States v. Curbelo*, 343 F.3d 273, 286 (4th Cir. 2003). Under a harmless error standard, the government bears

9

Case No. 2024-A-0046

the burden of demonstrating that the error did not affect the substantial rights of the defendant. *Id.* "An appellate court must reverse a conviction if the government does not satisfy this burden . . . ." *Id.* "Whether the defendant's substantial rights were affected depends on whether the error was prejudicial, i.e., whether it affected the outcome of the trial." *State v. Jones*, 2020-Ohio-3051, ¶ 18. Where the State fails to meet its burden, the appellate court must reverse the conviction. *Perry* at ¶ 15.

{¶22} "Both parties are given latitude during closing arguments to address what the evidence has shown and what reasonable inferences may be drawn from that evidence." *State v. Ford*, 2019-Ohio-4539, ¶ 306. A party's failure "'to call a witness who has some knowledge of the matter under investigation may be commented upon.'" *State v. D'Ambrosio*, 67 Ohio St.3d 185, 193 (1993), quoting *State v. Petro*, 148 Ohio St. 473, 498 (1948).

{¶23} Crim.R. 16(I) provides:

**Witness List.** Each party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal. The content of the witness list may not be commented upon or disclosed to the jury by opposing counsel, *but during argument, the presence or absence of the witness may be commented upon.*

(Emphasis added.)

{¶24} In *Ford*, the Ohio Supreme Court concluded that the trial court erred in sustaining an objection to the defense argument on the State's failure to call a witness. *Id.* at ¶ 310. However, the Court determined that the erroneous ruling was harmless beyond a reasonable doubt because there was "DNA evidence linking" the defendant to the murders as well as a confession. *Id.* at ¶ 311.

10

Case No. 2024-A-0046

{¶25} In this case, we similarly conclude that the trial court erred in sustaining the State's objection to the defense closing arguments. The trial court should have permitted trial counsel to comment upon the State's failure to call D.L.'s father as a corroborating witness. However, we conclude that this error was harmless beyond a reasonable doubt.

{¶26} To sustain a conviction under R.C. 2907.04(A), Unlawful Sexual Conduct with a Minor, the State must prove that Appellant engaged in sexual conduct with D.L. when Appellant knew D.L. was 13 years of age or older but less than 16 years of age, or that Appellant was reckless in that regard. The lab results from BCI indicated D.L.'s rape kit and D.L.'s underwear contained DNA consistent with Appellant. Further, D.L. testified that Appellant asked her numerous times about her driver's license and that her father and Teresa both said that she was only 15 years old and did not have a learner's permit. D.L. also said that Appellant individually asked people at the party their age and that D.L. told him her age. Although D.L.'s father was not called to corroborate this testimony, D.L.'s brother, Michael, testified that Appellant asked about D.L.'s age and said that D.L. told Appellant she was too young to drive.

{¶27} Therefore, the trial court's erroneous exclusion of the comment during closing arguments is harmless, as D.L.'s father would have been the third person to testify to that fact.

{¶28} Accordingly, Appellant's first assignment of error is without merit.

{¶29} Appellant's second assignment of error states: "The trial court committed reversible error in permitting the State to introduce inadmissible hearsay statements and irrelevant and prejudicial evidence, over his objection, in violation of Appellant's constitutional rights secured under the Fifth, Sixth and Fourteenth Amendments to the

11

United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution. (Tr. Vol. 2 at 119-124; Tr. Vol. 5 at 367-68; Tr. Vol. 4 at 334-35; Tr. Vol. 5 at 369-375; Tr. Vol. 5 at 483-84, 486-87; Tr. Vol. 5 at 435-445)."

{¶30} Appellant next argues that the trial court erred by admitting inadmissible evidence. First, he argues it was error for the court to admit improper other acts evidence that Appellant attempted to coerce D.L. to engage in sexual conduct with Tony. Second, he argues the trial court erred in permitting the SANE nurses to read inadmissible hearsay narrative statements into evidence.

{¶31} However, we substantively addressed both of these issues in *Volpi I*, 2023-Ohio-4488 (11th Dist.). We said that Appellant's arguments as to other acts evidence were "not well taken" because Appellant's statement and conduct "were admissible under Evid.R. 404(B)(2) to prove Appellant's knowledge of D.L.'s age and his absence of mistake in engaging in sexual conduct with her. *Id.* at ¶ 94. Finally, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice." *Id.* at ¶ 95. Appellant's arguments that this interaction took place after Appellant's last sexual encounter with D.L. is incorrect. Appellant engaged in sexual conduct with D.L. at the party shop, then talked to Tony, and then engaged in sexual conduct with D.L. again in the bedroom at the end of the evening. Further, this information would go to the weight of this evidence but would not render it inadmissible. It was still relevant for the jury to hear in considering Appellant's knowledge and absence of mistake.

{¶32} In *Volpi I* we also said, "the statements in the forensic interviews were admissible hearsay under Evid.R. 803(4) because they had been made for the purpose of medical diagnosis." *Id.* at ¶ 87. We further said that the forensic interviews, although

12

testimonial in nature, did not violate the Confrontation Clause because Appellant "had the full ability to cross-examine both victims. . . . Because appellant had the opportunity to confront the witnesses, the trial court's decision to allow the full video recordings did not violate his right to confrontation." *Id.* at ¶ 88.

**{¶33}** Accordingly, Appellant's second assignment of error is without merit.

**{¶34}** Appellant's third assignment of error states: "Appellant's convictions on counts 24 to 28 are against the manifest weight of the evidence. (Tr. Vol. 5 at 496-519; T.d. 389, May 2, 2024, Judgment Entry)."

**{¶35}** Appellant argues his convictions for Unlawful Sexual Conduct with a Minor involving D.L. were against the manifest weight of the evidence because of inconsistencies in her testimony, the jury's finding of not guilty on several counts, and the State's failure to call D.L.'s father as a corroborating witness.

**{¶36}** When evaluating the weight of the evidence, we review whether the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other indicated clearly to the jury that the party having the burden of proof was entitled to a verdict in its favor, if, on weighing the evidence in their minds, the greater amount of credible evidence sustained the issue which is to be established before them. "Weight is not a question of mathematics but depends on its effect in inducing belief." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates to the evidence's persuasiveness. *Id.* at 386-387.

**{¶37}** The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 2021-Ohio-4258, ¶ 22 (11th Dist.). The

13

trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the witness' interest, if any, in the outcome of the case, and the witness' connection with the prosecution or the defendant. *Id..* This Court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 2003-Ohio-7183, ¶ 52 (11th Dist.), citing *Thompkins* at 390 (Cook, J., concurring), and *State v. DeHass,* 10 Ohio St.2d 230, 227 (1967), paragraph two of the syllabus. The reviewing court "determines whether . . . the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶38}** A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 2013-Ohio-1842, ¶ 32 (11th Dist.).

**{¶39}** Appellant was convicted on one count of Unlawful Sexual Conduct with a Minor, in violation of R.C. 2907.04(A), which provides: "No person who is eighteen years of age or older shall engage in sexual conduct with another when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." When the offender is ten or more years older than the victim, the offense is a third-degree felony. R.C. 2907.04(B)(3).

**{¶40}** R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless

14

of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶41} R.C. 2907.04(A) includes a "reckless" standard with respect to a defendant's knowledge of the juvenile's age. R.C. 2901.22(C) states in relevant part: "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."

{¶42} There is overwhelming evidence that Appellant engaged in sexual conduct with D.L. BCI identified Appellant's DNA on D.L.'s underwear and in her rape test kit. D.L. testified about multiple encounters with Appellant and described the nature of each encounter in detail. Further, there is also no question that Appellant was ten or more years older than D.L. The only remaining question is whether Appellant either knew D.L. was less than 16 years old or was reckless in that regard.

{¶43} Appellant argues that Tiara Babbit testified that she believed D.L. was at least 16 years old based on her appearance, attitude, and willingness to engage in sexual conduct. He also argues that D.L.'s testimony was not credible, and her father did not corroborate her testimony that she told Appellant she was under 16 years old.

{¶44} While these arguments raise fair factual points that would weigh against conviction, the jury, as the sole judge of the credibility of the witnesses, was free to believe all or part of any witness' testimony. This Court engages in a limited weighing of the evidence and gives deference to the weight and findings made by the jury, determining

15

whether it "clearly lost its way" in an exceptional case where the evidence "weighs heavily against the conviction." *Martin*, 20 Ohio App.3d at 175.

**{¶45}** The weight of the evidence supports the jury's finding that Appellant either knew D.L. was less than 16 years old or was reckless in that regard for several reasons. First, Tiara Babbit's testimony that she thought D.L. was older than 16 years old does not mean that Tiara Babbit was not acting recklessly in that regard. While this is indeed evidence that would support Appellant's defense, it is not alone a determining fact but one fact among many the jury was free to weigh.

**{¶46}** As to D.L.'s credibility, there was significant evidence that would support the jury's conclusion that Appellant either knew her age or acted recklessly in that regard. For instance, this party was not the first time that Appellant had met D.L., and Appellant's daughter was dating D.L.'s father. Michael said he and D.L. were around Appellant frequently for family activities.

**{¶47}** At the party, D.L. said that Appellant asked numerous times about her ability to drive and D.L. told him that she was only 15 and did not yet have her learner's permit. Although D.L.'s father was not called to corroborate this testimony, D.L.'s brother, Michael, testified that Appellant asked about D.L.'s age and said that D.L. told Appellant she was too young to drive.

**{¶48}** Appellant also asked people at the party about their ages, and both A.W. and D.L. told Appellant how old they were. Appellant told his friend Tony that D.L. would be good in bed. D.L. said that Tony knew how old she was. This testimony was relevant to establish that Appellant knew D.L.'s age or was reckless in that regard.

16

**{¶49}** In giving deference to the factual findings the jury made regarding the weight to be given to the evidence and credibility of the witnesses, the evidence does not weigh heavily against conviction. *See State v. Gross*, 2012-Ohio-3020, ¶ 66 (11th Dist.). The jury did not lose its way in determining that Appellant engaged in sexual conduct with D.L. and that Appellant knew D.L. was less than 16 years of age or was reckless in that regard.

**{¶50}** Accordingly, Appellant's third assignment of error is without merit.

**{¶51}** Appellant's fourth assignment of error states: "The trial court's order of consecutive sentences is contrary to law and violates Appellant's constitutional right to due process of law. (T.D. 391, May 1, 2024 Re-sentencing T.p. at 15, 19, 33-34; T.d. 389, May 2, 2024, Judgment Entry)."

**{¶52}** Appellant sets forth five reasons why the trial court erred in imposing a consecutive sentence: (1) the trial court failed to make the necessary statutory findings to overcome the presumption against consecutive sentences; (2) the record does not support the imposition of consecutive sentences; (3) the trial court failed to consider the number of sentences it imposed and failed to consider the aggregate resulting sentence; (4) the consecutive sentences were based on incorrect information; and (5) the trial court erroneously imposed consecutive sentences based on the fact that there were two victims.

**{¶53}** R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify consecutive sentences only if the record does not "clearly and convincingly" support the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings.

17

{¶54} There are three ways an appellant can challenge consecutive sentences on appeal. *State v. Gibbs,* 2022-Ohio-4792, ¶ 64 (11th Dist.). First, the appellant may argue that the sentencing court failed to state the findings for consecutive sentences that R.C. 2929.14(C)(4) requires. *State v. Lautanen,* 2023-Ohio-1945, ¶ 84 (11th Dist.); R.C. 2953.08(G)(1). Second, an appellant may argue that the record clearly and convincingly does not support the findings the sentencing court made to justify consecutive sentences. *State v. Lewis* at ¶ 7; R.C. 2953.08(G)(2)(a). Third, an appellant may argue that his sentence is clearly and convincingly otherwise contrary to law. R.C. 2953.08(G)(2)(b).

{¶55} R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶56} A sentencing court is required to make three distinct findings in order to require an offender to serve consecutive prison terms: (1) that consecutive sentences are "necessary to protect the public from future crime or to punish the offender;" (2) that

18

consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public;" (3) "and . . . also" that one of the circumstances described in subdivision (a) to (c) is present. *State v. Woofter*, 2019-Ohio-1166, ¶ 13 (11th Dist.), citing *State v. Beasley*, 2018-Ohio-493, ¶ 252.

**{¶57}** In making its findings for consecutive sentences, the sentencing court is required to engage in the analysis for consecutive sentencing and specify the statutory criteria warranting its decision. *State v. Bonnell*, 2014-Ohio-3177, ¶ 26. While the sentencing court is not required to state exact reasons supporting its findings, the record must contain a clear basis upon which a reviewing court can determine that the sentencing court's findings for imposing consecutive sentences are supported by the record. *Id.* at ¶ 27-28. In making its findings, the trial court is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* at ¶ 37.

**{¶58}** Appellant argues that the trial court did not make the necessary statutory findings as required by R.C. 2929.14(C)(4) to impose consecutive sentences at the hearing.

**{¶59}** Relying on the recent Ohio Supreme Court decision in *State v. Jones*, 2024-Ohio-1083, the State argues that the record of the sentencing hearing contains sufficient indicia that the trial court found that consecutive sentences were necessary based on the statutory criteria. In *Jones*, the Court said that the "transcript of Jones's sentencing hearing clearly shows that the trial court made the findings necessary to impose consecutive sentences, and Jones has not demonstrated that those findings were not supported by the record." *Id.* at ¶ 15. For example, the trial court said that it was imposing

19

consecutive sentences because it was necessary to protect the public from future crime, and the trial court cited appellant's prior arrest history, saying he had committed crime "over and over again." *Id.* The trial court then said that a total 60-month sentence was "not disproportionate to the crime you have committed in this case" and that Jones had committed one or more of the offenses while awaiting trial or sentencing. *Id.*

**{¶60}** The Ohio Supreme Court concluded these statements "reflect a clear finding by the trial court that 'consecutive service is necessary to protect the public from future crime . . . and that consecutive sentences are not disproportionate to the seriousness of [Jones's] conduct and to the danger [he] poses to the public,' R.C. 2929.14(C)(4)." *Id.* at ¶ 16. Thus, while not a talismanic incantation of the consecutive sentence findings, the trial court did address each of the required findings contained in R.C. 2929.14(C)(4). *Id.*

**{¶61}** In this case, the trial court said the following in refence to consecutive sentences:

> The Court finds that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm cause[d] by the two or more multiple offenses was so great or unusual that no single prison term for the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> So, I am ordering that the sentences on Counts Twenty-Four, Twenty-Five, Twenty-Six, Twenty-Seven, and Twenty-Eight be served consecutively to each other and consecutive to the sentence in Count Twelve. So, on these five counts, it would be 25 years consecutive to Count Twelve.

**{¶62}** The above statement exclusively addressed R.C. 2929.14(C)(4)(b). Notably absent is any reference to, or consideration of, whether the consecutive sentences were necessary to protect the public from future crime or to punish the offender or whether

20

Case No. 2024-A-0046

consecutive sentences were not disproportionate to the seriousness of Appellant's conduct or the danger Appellant posed to the public.

{¶63} In *Jones*, the trial court made statements at the sentencing hearing that demonstrated the trial court had made all necessary findings under R.C. 2929.14(C) in order to impose consecutive sentences, citing the defendant's extensive arrest history and saying that the sentence was necessary to protect the public from future crime. The trial court also specifically said that a 60-month sentence was "not disproportionate." *Jones* at ¶ 15.

{¶64} Viewing Appellant's sentencing hearing in its entirety, we cannot say the same thing here.

{¶65} As to the necessity to protect the public from future crime or punish the offender, the trial court did discuss the R.C. 2929.12 seriousness and recidivism factors. There is overlap with the necessary findings that consecutive sentences are necessary to protect the public from future crime and punish the offender. The trial court said that the case involved multiple victims and that recidivism appeared likely. The concern for recidivism can constitute a finding that consecutive sentences are necessary to protect the public from future crime.

{¶66} So, the trial court "arguably made comments that could be construed as a finding that consecutive sentences were necessary to protect the public from future crime and/or punish" the offender. *Woofter*, 2019-Ohio-1166, at ¶ 16 (11th Dist.) (where the trial court referenced the defendant's repeated community control violations and danger to the public); *see Bonnell*, 2014-Ohio-3177, at ¶ 33 (where the trial court stated the defendant

had shown little respect for society and found his record to be "atrocious," demonstrating the need for consecutive sentences to protect the public from future crime).

**{¶67}** However, during the sentencing hearing the trial court never referenced or commented upon the proportionality of Appellant's total sentence. *See Woofter* at ¶ 17. We find nothing in the record that would indicate the trial court made a proportionality finding. Appellant raised *State v. Glover*, 2024-Ohio-5195, during oral arguments to argue in support of his position against the imposition of consecutive sentences. However, that case is inapt because in *Glover*, the trial court did make the necessary proportionality findings, with which the First District took issue and reversed. The Ohio Supreme Court plurality decision held that the imposition of consecutive sentences was appropriate and not disproportionate to the seriousness of the defendant's conduct and danger he posed to the public. *See Id.* at ¶ 53

**{¶68}** There is a presumption that sentences will be served concurrently. *Jones*, 2024-Ohio-1083, at ¶ 11. Although the trial court said that it did not believe Appellant should not serve additional time in a case where there are multiple victim, the trial court also acknowledged that consecutive sentences are not mandatory in this case. Because consecutive sentences are not mandatory here, there is a presumption that the sentences will be served concurrently. We cannot overlook the record's lack of a proportionality finding necessary to impose consecutive sentences under R.C. 2929.14(C)(4).

**{¶69}** When, as here, "the findings at the sentencing hearing and in the sentencing entry are insufficient to satisfy the requirements of R.C. 2929.14(C)(4), it is well-established that remand for resentencing is necessary to correct the error." *Woofter* at ¶ 19, citing *Beasley*, 2018-Ohio-493, at ¶ 260.

22

Case No. 2024-A-0046

{¶70} Accordingly, Appellant's fourth assignment of error has merit.

{¶71} Appellant's fifth assignment of error states: "The trial court's sentences on Counts 24 to 28 are contrary to law and unconstitutional because in imposing sentence, the trial court considered Appellant's silence at trial, in violation of his constitutional right against self-incrimination secured by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution. (T.d. 389, May 2, 2024, Judgment Entry; T.d. 391, Re-sentencing Tp. At 18)."

{¶72} Appellant's sixth assignment of error states: "The trial court's imposition of an aggregate sentence of 36 years to 41.5 years imprisonment under the circumstances of this case amounts to cruel and unusual punishment under the Eighth Amendment of the United States Constitution and Article I, Section 9 of the Ohio Constitution. (T.d. 389, May 2, 2024, Judgment Entry)."

{¶73} Appellant's fifth and sixth assignments of error both relate to the trial court's imposition of sentence. As we have found it necessary to reverse and remand for resentencing, these assignments of error are rendered moot.

23

Case No. 2024-A-0046

{¶74} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded. The matter is remanded to the trial court to resentence Appellant. If the trial court imposes consecutive sentences, the trial court is instructed to make all necessary findings as required by R.C. 2929.14(C)(4).

MATT LYNCH, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2024-A-0046